IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARMAYNE G.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:21-cv-00294-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Charmayne G. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits and Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in September 1970, plaintiff alleges disability beginning January 7, 2018, due to anxiety, depression, agoraphobia, asthma, and insomnia. Tr. 199. Her applications were denied initially and upon reconsideration. On July 1, 2020, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by an accredited disability representative and testified, as did a vocational expert ("VE"). Tr. 26-50. On August 5, 2020, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-21. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "major depressive disorder, social anxiety, agoraphobia, and trichotillomania." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform work at all exertion levels, but with the following non-exertional limitations: "she is limited to understanding and carrying out simple instructions consistent with reasoning level one or two, and she is limited to occasional contact with the general public and co-workers." Tr. 17.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 20. At step five, the ALJ concluded, based on the VE's testimony, that there existed a

significant number of jobs in the national economy plaintiff could perform despite her impairments, such as router, routing clerk, and marker. Tr. 20-21.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom statements; and (2) failing to address the medical opinion of examining psychologist Karla Rae Causeya, Psy.D.

### I.     Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her mental impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Page 3 – OPINION AND ORDER

At the hearing, plaintiff testified that she stopped working because her adult "son committed suicide." Tr. 34. Plaintiff explained that she started counseling through Cascadia Mental Health shortly after her son died to address her own suicidal ideations and has remained in treatment since that time. Tr. 36-37. Plaintiff characterized her ongoing symptoms as follows:

> I have suicidal thoughts daily . . . when things are so bad I don't want to leave my house. I'll stay in until I have to go out. I don't want to talk to anyone. If someone talks to me, I try to find a reason to walk away. I just feel very uncomfortable in my own skin and the world around me . . . [in counseling] we're trying to work through things I can do to calm my anxiety when I start getting tremors and shakes, and problems breathing, because I have such high anxiety.

Tr. 39-40. Plaintiff reported that she was initially placed on medication to treat her mental health symptoms but "ended up with serotonin syndrome." Tr. 38. As a result, plaintiff stated she was not currently on any medications: "now I'm afraid to take anything because it's going to make things worse." *Id.*

In terms of daily activities, plaintiff testified that she prepares simple meals and hand washes her clothes in her apartment (to avoid the laundry room), checks her post office box "at least once a month," and goes "to the grocery store every once in a while [but there are] times where I put it off for three or four days . . . I get ready to go, and then I can't." Tr. 41-42. She remarked that she does not take public transportation or travel in cars because it "causes anxiety attacks." Tr. 41. Every so often plaintiff will speak to other women from the shelter or her son. Tr. 42. Plaintiff indicated that she continues to be involved selling Street Roots newspapers, explaining that she likes it because "I don't have to do every day. I can only sometimes be out there for, like, an hour, or there's even days where I go to walk out to where I'm supposed to sell and I have to turn around and leave because I don't feel comfortable . . . But it gives me that option where I don't have to, like, clock in or do it." Tr. 38-39.

Page 4 – OPINION AND ORDER

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 18. In particular, the ALJ cited to plaintiff's "unwilling[ness] to engage in group counseling or medication services," as well as the lack of medical evidence indicative of "a more limited restriction."[2] Tr. 18-19.

In discussing the former, the ALJ found that, "[a]lthough it is not the primary basis for the decision in this case," plaintiff's refusal to attend group therapy or take medication "demonstrates a possible unwillingness to do what is necessary to improve her condition [and] may also be an indication that her symptoms are not as severe as she purports." Tr. 18-19. However, the record is replete with evidence demonstrating plaintiff experienced serious side-effects from anti-depressants. *See, e.g.*, Tr. 299, 330, 346, 353, 617. As a result, Erik Vanderlip, M.D., diagnosed her with "[m]ild to moderate serotonin syndrome" and opined that "cessation of sertraline is warranted." Tr. 621-22. Following that event, plaintiff became "weary of psychiatric medications,"

---

[2] The Commissioner also asserts that the ALJ weighed plaintiff's "activities against her allegations," including that "she spent time selling newspapers and had a friend she could call for support." Def.'s Resp. Br. 6 (doc. 27). Yet the only mention of these activities occurred fleetingly in the ALJ's recitation of the medical record. Tr. 18; *see also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (as amended) (court "may review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely"). Regardless, this reason, even if properly before the Court, does not lend support to the ALJ's conclusion. Namely, plaintiff's work selling Street Roots is both sporadic and part-time, and arranged to accommodate her conditions. *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability"). Because she earns less than substantial gainful levels (and may be engaged in some form of sheltered workshop), it is undisputed that this work did not satisfy the ALJ's step-one inquiry or qualify as past relevant work. Tr. 15, 20. Further, the fact that plaintiff has limited social support does not impugn her testimony concerning anxiety surrounding public interactions.

Page 5 – OPINION AND ORDER

especially because they "never really worked." Tr. 299, 353. Given these circumstances, the ALJ's reliance on plaintiff's "unwilling[ness] to engage in . . . medication services" was improper. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (failure to take prescribed medications was not a valid reason to discredit the claimant's testimony where his physician indicated those medications caused "addiction potential or intolerable side effects").

The ALJ is correct that plaintiff was encouraged to participate in bereavement groups in response to her ongoing grief following her son's suicide. Tr. 298, 329, 479, 499. As such, this modality of treatment does not seem aimed at plaintiff's allegedly disabling impairments – i.e., generalized depression, anxiety, agoraphobia, and trichotillomania. In any event, the record reflects that plaintiff eventually tried grief support groups "through the shelter but [did] not like them." Tr. 298, 329. Accordingly, the ALJ's reliance on plaintiff's "unwilling[ness] to engage in group counseling" was equally improper. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (only "unexplained or inadequately explained" failures to follow a prescribed course of treatment are relevant to the ALJ's assessment of the claimant's subjective symptom testimony).

Turning to the ALJ's final rationale, "whether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). Stated differently, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ's other reasons for finding that testimony unreliable are not supported by substantial evidence. *See Brown v. Colvin*, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014) (reversing the ALJ's credibility finding

where the only rationale supported by substantial evidence was inconsistency with the medical record).

In any event, the ALJ mischaracterized the record in recounting the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). Notably, the routine examination findings cited by the ALJ – e.g., good eye contact, no hallucinations, normal mood and affect, good hygiene, etc. – have no bearing on and therefore do not undermine plaintiff's subjective symptom testimony concerning her depression and anxiety. Tr. 18. This is especially true considering there are a number of medical records evincing plaintiff struggled with symptoms during several appointments. *See* Tr. 295 (plaintiff left a dental appointment prematurely because she was "feeling very anxious" and "appeared distressed (was crying) . . . stat[ing] she could not think straight"), 366-67 (Dr. Causeya observing that plaintiff's "affect was restricted in range, appearing to be depressed and crying fairly consistently throughout the evaluation" and, "[m]ost of the time, she did not make any eye contact"); *see also* Def.'s Res. Br. 5 (doc. 27) (Commissioner acknowledging that plaintiff "had abnormal findings at times"). And, as discussed in Section II, the ALJ failed to discuss the only examining medical opinion.

In sum, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony. The ALJ's decision is reversed as to this issue.

**II.     Medical Opinion Evidence**

Plaintiff next asserts that the ALJ improperly discredited the opinion of Dr. Causeya. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer

Page 7 – OPINION AND ORDER

tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[3] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

In August 2018, Dr. Causeya completed a "Psycho-Diagnostic Evaluation" of plaintiff at the request of Vocational Rehabilitation Services. Tr. 362. Her exam consisted of a clinical interview, mental status exam, and objective testing. Tr. 362-71. Dr. Causeya diagnosed plaintiff with post-traumatic stress disorder, severe depression, social anxiety, agoraphobia, and trichotillomania. Tr. 365-66, 370. Although objective testing revealed some areas of relative strength, plaintiff also demonstrated deficits in verbal comprehension, writing, working memory, and auditory memory. Tr. 367-70. In the narrative portion of his report, Dr. Causeya stated:

> [Plaintiff] reports experiencing significant mental health symptoms throughout her lifetime [with] symptoms originat[ing] in early childhood and may have been significantly impacted by the treatment she received from her primary care giver, her mother. Throughout her lifetime, [plaintiff] has had few friendships, and in her relationships with men she was generally the only person working. Approximately one year ago, one of her son's committed suicide. Her son's suicide may have

---

[3] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

Page 8 – OPINION AND ORDER

> increased her symptoms of depression and anxiety, as she reports she has been unable to work for more than six months. It is recommended that [plaintiff] apply for social security disability, given the long duration of her symptoms, and multiple diagnoses. Her symptoms prevent her obtaining and maintaining gainful employment.
>
> [Plaintiff's] report of memory problems is reflected in her scores for auditory memory on the WMS-IV. Her auditory memory is in the Borderline range. She has difficulty retrieving auditory information from memory and will benefit from the details being presented in a recognition rather than a free recall format . . . [she] may be assisted in her memory by keeping lists and written reminders of everything she needs to recall, rather than relying on hearing the information only.
>
> [Plaintiff's] visual-spatial problem solving is in the High Average range, while her overall verbal scores are significantly lower, in the Low Average range. Her Working Memory score on the WAIS-IV is also significantly lower than her Perceptual Reasoning score.
>
> [Her] scores on the Woodcock-Johnson indicate that her ability to communicate in writing lacks fluidity and clarity. It is recommended that she seek employment in an area that does not require written expression. Her reading skills are adequate and her ability to apply mathematics to real life situations is much higher than her ability to perform mathematical problems presented in numerical or equation formats. If math is required in her work duties, it is recommended she be able to use a calculator.
>
> It is recommended that [plaintiff] will likely perform best in positions that require little contact with others, given her level of anxiety and fear of social interaction . . . Her multiple diagnoses will likely make it difficult for [her] to access behavioral health treatment and to form a relationship with a therapist. She has a history of no positive, enduring relationships throughout her lifetime. Her lack of positive relationships, beginning with her relationship with her mother, create high levels of anxiety when interacting with others.

Tr. 370-71.

The ALJ did not discuss or evaluate Dr. Causeya's medical opinion in any meaningful way, or even acknowledge her as an examining source. The only mention of her report is in passing citations to its exhibit number when discussing "Paragraph B" criteria at step three, or the more general medical record (which, as addressed in Section I, the ALJ mischaracterized). Tr. 16-18. Indeed, the entirety of the ALJ's discussion surrounding the medical opinion evidence concerns

Page 9 – OPINION AND ORDER

the state agency reviewing sources. *But see Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ "must explain why significant probative evidence has been rejected"); *see also Morgan v. Comm'r of. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("the opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician") (citations omitted).

The Commissioner's brief is unpersuasive to the extent she contends such an error was harmless because "Dr. Causeya's examination did not include any concrete opinions" and instead only made "recommendations and identified ideal working conditions" that are consistent with the jobs identified by the VE. Def.'s Resp. Br. 3-4 (doc. 27). As detailed above, Dr. Causeya made several findings that are relevant to the ALJ's assessment of plaintiff's ability to work and directly bear on the formulation of her RFC. For example, Dr. Causeya intimated that plaintiff should have virtually no contact with others, whereas the ALJ's RFC provides for "occasional" contact with the public and coworkers – i.e., up to one-third of an eight-hour workday – and does not limit supervisor interactions. *See Spears v. Berryhill*, 2017 WL 443683, *4 (W.D. Wash. Feb. 2, 2017) (RFC for "occasional" public contact failed to adequately incorporate the opinion of an examining psychologist who indicated the claimant would best be suited for work in "interpersonal isolation").

Moreover, courts both within and outside this District have routinely held that reversal is warranted under analogous circumstances. *See Mason v. Barnhart*, 63 Fed.Appx. 284, 287 (9th Cir. 2003) (reversing the ALJ's decision where it "seems to reject without comment Dr. Powell's assessment of" the claimant "making it difficult for this court to engage in meaningful review"); *Dickey v. Colvin*, 74 F.Supp.3d 1118, 1132 (N.D. Cal. 2014) (reversing the ALJ's decision where she "failed to discuss any of Dr. Chapman's opinions regarding Dickey's psychological issues or

his daily life activities," noting "[t]he ALJ has the obligation to evaluate the testimony of [the claimant's doctors] and may not ignore it"); see also Parsons v. Comm'r of Soc. Sec. Admin., 2013 WL 6145118, *7-8 (D. Or. Nov. 7, 2013) (treating nurse practitioner's "observations about plaintiff's impairments and his functional limitations constitute significant probative evidence that the ALJ could not reject without comment," and rebuffing the Commissioner's arguments surrounding the harmlessness of the error as "specious"); Tina G. v. Saul, 2021 WL 1579898, *4 (D. Or. Apr. 22, 2021) (refusing to consider the Commissioner's "post-hoc reasons," denoting that "[g]overning case law provides that failing to mention a medical opinion is tantamount to its rejection, and a silent rejection is impermissible"); Woods, 32 F.4th at 792 ("[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion . . . without providing an explanation supported by substantial evidence"). Therefore, the ALJ committed reversible error in regard to Dr. Causeya's assessment.

### III. Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly weigh evidence from plaintiff and Dr. Causeya. The record is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling mental impairments. On one hand, it is undisputed that plaintiff's depression and anxiety are longstanding, and have persisted at significant levels following the death of her son. On the other hand, plaintiff's symptoms at times seemed exacerbated by situational stressors, including the loss of housing and placement in a shelter (and subsequently, the COVID-19 pandemic). Further, while the ALJ was required to address the persuasiveness of Dr. Causeya's opinion, many of her conclusions are phrased equivocally. *See Collum v. Colvin*, 2014 WL 3778312, *4 (D. Or. July 30, 2014) (an ALJ is "not required to incorporate limitations phrased equivocally into the RFC" – i.e., functional limitations prefaced with language such as "might," "may," or "would also likely require") (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009)).

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the remote alleged onset date, coupled with the dearth of medical opinion evidence and complex nature of plaintiff's conditions, a consultative examination would be helpful in clarifying plaintiff's functional abilities. Therefore, upon remand, the ALJ must order a consultative examination with a mental health specialist and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 11th day of October, 2022.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 13 – OPINION AND ORDER